**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-01916-CMA-KLM

SANDRA ELLIS, on behalf of herself and others similarly situated,

      Plaintiff,

v.

J.R.'S COUNTRY STORES, INC., a Colorado corporation,

      Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Summary Judgment filed by Defendant J.R.'s Country Stores, Inc. ("J.R.'s"). (Doc. # 8.)  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).  For the reasons discussed below, the motion is granted.

## I.  BACKGROUND

      J.R.'s employed Plaintiff Sandra Ellis as a general store manager from approximately December 2007 until April 6, 2012, at its store in Holly, Colorado. J.R.'s classified Ellis as an "exempt employee" and, therefore, did not pay her overtime wages.  According to J.R.'s "Store Manager Base Pay Plan," Ellis was required to work "a minimum of 50 hours per week and a minimum 5 day work week."  (Doc. # 31-2 at 2.) That plan further provides that managers, as "salaried employee[s], . . . will still be required to work whatever number of hours per week is necessary to effectively run their

store." (*Id.*)  Ellis was paid on a weekly basis.  On April 3, 2012, J.R.'s paid Ellis a total of $593.80, which was $31.20 less than her prevailing salary of $625 per week.[1]  This was the only instance in which J.R.'s paid Ellis less than her predetermined salary. On April 6, 2012, Ellis resigned.  The following month, J.R.'s reimbursed her a total of $322.88 after "receiv[ing] notice from [her] of the allegedly improper deduction."[2] (Doc. ## 8 at 10; 8-12 at 5.)

On July 23, 2012, Ellis initiated this action, asserting one claim for relief under the FLSA, 29 U.S.C. § 201, *et seq.*  (Doc. # 1.)  J.R.'s filed an Answer on August 31, 2012 (Doc. # 7), and it moved for summary judgment on October 11, 2012 (Doc. # 8). Ellis did not respond to the motion.  Instead, she filed a "Motion to Certify Conditionally a Collective Action under the Fair Labor Standards Act of 29 U.S.C. § 216(b) and for Court Assisted Notice" (Doc. # 13) on October 18, 2012, and a motion to defer judgment (on J.R.'s summary judgment motion) on October 31, 2012 (Doc. # 15).  Thereafter, J.R.'s filed a motion to stay (Doc. # 16), along with a "Motion for Extension of Time to File Response to Plaintiff's Certification Motion Pending the Court's Ruling on Defendant's Motion for Summary Judgment or its Ruling on Defendant's Motion for a Temporary Stay" (Doc. # 17).

On December 11, 2012, the Court granted J.R.'s motion to stay, denied Ellis's motion to defer judgment, denied as moot J.R.'s "Motion for Extension of Time to File

---

[1]   The parties maintain different, though overlapping, explanations as to why Ellis's pay was reduced on April 3, 2012.  (*Compare* Doc. # 8 at 7 n.3, *with* Doc. # 31-1 at 2.)  Regardless, as pertinent here, the parties agree that Ellis's pay was reduced as a result of her inability to work 50 hours during the workweek of March 16, 2012–March 22, 2012.

[2]   J.R.'s explains its method for calculating the reimbursement amount, which Ellis does not contest, at Doc. # 8-12.

Response to Plaintiff's Certification Motion Pending the Court's Ruling on Defendant's

Motion for Summary Judgment or its Ruling on Defendant's Motion for a Temporary

Stay," and stayed proceedings related to Ellis's "Motion to Certify Conditionally a

Collective Action under the Fair Labor Standards Act of 29 U.S.C. § 216(b) and for Court

Assisted Notice."  (Doc. # 24.)  Thereafter, Ellis responded to J.R.'s summary judgment

motion (Doc. # 31), to which J.R.'s replied (Doc. # 34).  As such, the motion is ripe for

ruling.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is warranted when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is essential to proper

disposition of the claim under the relevant substantive law.  *Wright v. Abbott Labs.*, *Inc.,*

259 F.3d 1226, 1231–32 (10th Cir. 2001).  A dispute is "genuine" if the evidence is such

that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen*

*v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for

summary judgment, a court must view the evidence in the light most favorable to the

non-moving party.  *Id.*  However, conclusory statements based merely on conjecture,

speculation, or subjective belief are not competent summary judgment evidence.

*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of

a genuine dispute of material fact and entitlement to judgment as a matter of law.  *Id.*

In attempting to meet this standard, a movant who does not bear the ultimate burden of

persuasion at trial does not need to disprove the other party's claim; rather, the movant

3

need simply point out to the Court a lack of evidence for the other party on an essential

element of that party's claim. *Adler v Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.

1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving

party to "set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may

not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party

must "set forth specific facts that would be admissible in evidence in the event of trial

from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671.

"To accomplish this, the facts must be identified by reference to affidavits, deposition

transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the Court notes that summary judgment is not a "disfavored procedural

shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy

and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting

Fed. R. Civ. P. 1).

### III. <u>DISCUSSION</u>

Ellis asserts that J.R.'s violated the FLSA's "salary-basis" test by "monitoring her

hours worked, threatening to lower her pay based on the quantity of work performed,

reducing her pay based on the quantity of work performed, and requiring her to work

a minimum of 50 hours a week and requiring her to work five days a week." (Doc. # 1

at 4-6.) The Court disagrees.

The purpose of the FLSA is to "protect all covered workers from substandard

wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*,

450 U.S. 728, 739 (1981).  The FLSA accomplishes this, at least in part, by requiring

employers to pay employees for hours worked in excess of forty per week at a rate

of 1.5 times the employees' regular wage.  *See* 29 U.S.C. § 207(a).  However, this

requirement does not apply to all employees.  *See* 29 U.S.C. § 213.  For example, "any

employee employed in a bona fide executive, administrative, or professional capacity"

is, with certain exceptions not relevant here, exempt from this requirement.  *See id.*

at § 213(a)(1).  To qualify as a "bona fide executive, administrative, or professional"

employee, the employee must be compensated on a salary basis.  29 C.F.R.

§ 541.100(a)(1), 200(a)(1), 300(a)(1).  As a general rule, "[a]n employee will be

considered to be paid on a 'salary basis' within the meaning of [the FLSA] if the

employee regularly receives each pay period on a weekly . . . basis, a predetermined

amount constituting all or part of the employee's compensation, which amount is not

subject to reduction because of  variations in the quality or quantity of the work

performed."  *Id.* at § 541.602(a).  Subject to some exceptions not at issue here,

"an exempt employee must receive the full salary for any week in which the employee

performs any work without regard to the number of days or hours worked."  *Id.*  When

an employer makes "improper deductions from salary[,]" it will "lose the exemption if the

facts demonstrate that the employer did not intend to pay employees on a salary basis.

An actual practice of making improper deductions demonstrates that the employer did

not intend to pay employees on a salary basis."  *Id.* at § 541.603(a).

    The following factors are considered when determining whether an employer

maintains an actual practice of making improper deductions:

- the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline;

- the time period during which the employer made improper deductions;

- the number and geographic location of employees whose salary was improperly reduced;

- the number and geographic location of managers responsible for taking the improper deductions, and

- whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.

*Id.* However, under the FLSA's "window of correction" defense, "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." *Id.* at § 541.603(c). Further, the statutory section governing the effect of improper deductions from salary "shall not be construed in an unduly technical manner so as to defeat the exemption." *Id.* at § 541.603(e).

## A.    INTENT TO PAY ON A SALARY BASIS

Considering the law set forth above and the totality of the circumstances in this case, J.R.'s did not violate the salary-basis test. To begin with, Ellis does not dispute that J.R.'s reduced her pay on only one occasion. However, the United States Supreme Court has recognized that a one-time deduction taken under unusual circumstances will not defeat the salaried status of employees. *Auer v. Robbins*, 519 U.S. 452, 460-61 (1997); *accord Carpenter v. City & Cnty. of Denver*, 115 F.3d 765 (10th Cir. 1997) (citing

*Auer* and considering two instances of alleged deductions as "one time" deductions under unusual circumstances); *Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680 (1st Cir. 2007) ("two aberrant paychecks out of the approximately 50 that [plaintiff] received do not amount to an 'actual practice'"); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365 (7th Cir. 2005) ("Identifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried.").

To be sure, Ellis asserts that the $31.20 deduction on April 3, 2012, was not taken under unusual circumstances but, rather, was part of "a 'policy' requiring a deduction" maintained by J.R.'s.  (Doc. # 31 at 2, 4.)  However, Ellis supports her assertion only with her own affidavit which, in turn, merely recites alleged statements of another J.R.'s manager that arguably substantiate Ellis's description of J.R.'s "policy" of docking salaried employees' pay for working too few hours.[3]  (Doc. # 31-1, ¶ 14.) These statements, however, are inadmissible hearsay and, thus, cannot support Ellis's opposition to J.R.'s summary judgment motion.  *See, e.g.*, *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) ("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.") Moreover, Ellis's assertion is belied by J.R.'s employee handbook, which contains a written policy that "prohibits deductions from an exempt, salaried employee's pay

---

[3]   In her affidavit, Ellis recounts a conversation she had with an office manager named Kathy: "I said something like 'This is the thanks I get for all the 60 and 70 hours [*sic*] weeks I worked?' She said that is their 'policy' and that is what she had to do."  (Doc. # 31-1, ¶ 14.)

except under the circumstances set forth in the Fair Labor Standards Act (FLSA) and state law."[4]  (Doc. # 31-6 at 6.)

Further, according to J.R.'s timesheets, Ellis's inability to work 50 hours during the workweek of March 16, 2012–March 22, 2012, was only one of several recorded instances in which she worked less than 50 hours/week.  According to the evidence submitted by J.R.'s,[5] Ellis worked less than 50 hours on 13 separate occasions, not counting holidays or days when Ellis was sick or on vacation.  (Doc. # 8 at 8 (referencing attached timesheets).)  For her part, Ellis argues that "the only time she failed to work 50 hours in a single workweek" was during the week of March 16, 2012– March 22, 2012, which resulted in her pay being docked.  (Doc. # 31 at 4.)  In her affidavit, Ellis merely argues that the timesheets are "incomplete" or that "I know I worked more than 50 hours [in a given week] because of the hours I worked beyond the schedule and my days off."  (Doc. # 31-1 at 4-5.)  However, such statements are conclusory and self-serving and, thus, unpersuasive.  *See, e.g.*, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider 'conclusory and self-serving affidavits.'" (citation omitted)); *Moore's Federal Practice* § 56.41[1][c]

---

[4]   The Court rejects Ellis's assertion, which she fails to further develop or explain, that "Defendant's written policy on deductions from exempt employees' pay was not clear."  (Doc. # 31 at 4, 11.)  The policy explicitly references the FLSA (and state law) which, undisputedly, is the relevant law.  To the extent Ellis's real complaint is that the policy "left the task of learning that deductions from an exempt employee's pay for absences from work of less than a day's duration are prohibited by the FLSA" (*id.* at 11), she cites no authority, nor is the Court aware of any, indicating that a policy fails to be clear merely because it incorporates by reference, but does not reiterate in full, the governing law.

[5]   The timesheets J.R.'s submitted show an "in," "out," and "total" figure for each day worked, as well as a "total hours" and "employee name" column.  (*See* Doc. ## 8-4, 8-5, 8-6, 8-7, 8-8, 8-9, 8-10, 8-11.)  The timesheets also indicate the employee's "rate" and "gross pay" though, for Ellis, the word "salary" is handwritten for her entries.  (*See id.*)

("Merely restating a pleading, submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion."). Ellis has provided no evidence – such as an affidavit from another manager or coworker – to substantiate her assertions of having worked more than J.R.'s timesheets indicate. Accordingly, without more, her affidavit fails to establish a genuine dispute of material fact as to the number of weeks in which she worked less than 50 hours. *See, e.g.*, *United States v. $21,055.00 in U.S. Currency*, 778 F. Supp. 2d 1099, 1102-03 (D. Kan. 2001) ("Nor is a conclusory, self-serving affidavit by a claimant sufficient to create a genuine issue of material fact . . . without corroborating documentation."). As such, the Court agrees with J.R.'s statement that the evidence shows that, "despite working less than 50 hours 13 different times," Ellis's pay was reduced only one time. (Doc. # 8 at 8.) This ratio falls well short of establishing that J.R.'s maintained an actual practice of making improper deductions. *See, e.g.*, *Mathews v. Bronger Masonry, Inc.*, 772 F. Supp. 2d 1004, 1012-13 (S.D. Ind. 2011).

Further, the remaining § 541.603(a) factors do not favor Ellis's position. First, as J.R.'s timesheets show, the time period during which J.R.'s made the $31.20 deduction pertained to a single week – *i.e.*, the workweek of March 16, 2012–March 22, 2012. The Court is not persuaded by Ellis's argument that the Court "cannot apply this factor at this time because [Ellis] has not yet conducted discovery" on the issue. (Doc. # 31 at 10.) It its December 11, 2012 Order, the Court noted that J.R.'s had provided Ellis with "all the payroll records and timesheets that she needs to respond to the Summary Judgment Motion . . . ." (Doc. # 24 at 4.) In any event, as already mentioned, Ellis

concedes that her pay was only reduced one time; she fails to explain, nor is it obvious

to the Court, how additional discovery would avail her on this issue.  Second, with

respect to the number and geographic location of additional employees whose salary

was improperly reduced, the Court stayed proceedings on that issue because, having

experienced only one allegedly improper deduction, Ellis appeared to lack a viable

claim, which could not be salvaged by recourse to evidence relating to other individuals.

(*See* Doc. # 24 at 4.)  Since the Court's December 11, 2012 Order, Ellis has not

produced evidence showing that additional improper deductions were made to her

pay and, therefore, even if she were to have relevant evidence as to deductions

experienced by other individuals, she would be unable to establish that she suffered

an actual practice of improper deductions maintained by J.R.'s.  *See, e.g.*, *Cash*,

508 F.3d at 683-84 (addressing only the number of improper deductions taken and

concluding that two such deductions did not constitute an actual practice).  Third, for

substantially the same reason, the "number and geographic location of managers

responsible for taking the improper deductions" does not support Ellis's position.

No such "deductions" (plural), occurred – only the singular deduction that Ellis

acknowledges.  Fourth, and finally, as previously discussed, J.R.'s employee handbook

contains a written policy "prohibit[ing] deductions from an exempt, salaried employee's

pay except under the circumstances set forth in the Fair Labor Standards Act (FLSA)

and state law." (Doc. # 31-6 at 6.)  Such a policy clearly communicates that improper

deductions are prohibited.  *See* 29 C.F.R. § 541.603(d) ("The best evidence of a clearly

communicated policy is a written policy that was distributed to employees prior to the

improper pay deductions by, for example, . . . publishing the policy in an employee

handbook . . . .").  Accordingly, Ellis has failed to demonstrate that J.R.'s did not intend

to pay her on a salary basis.

The Court is not persuaded to the contrary by the additional arguments Ellis

raises.  For instance, Ellis asserts that J.R.'s violated the salary-basis test by requiring

her to track the hours she worked and to work five days/week for a minimum of 50

hours/week.  (Doc. # 1 at 4.)  However, neither requirement violates the FLSA.  The

United States Department of Labor has recognized "that employers, without affecting

their employees' exempt status, may . . . require exempt employees to record and track

hours [and] may require exempt employees to work a specified schedule."  Dep't of

Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive,*

*Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg.

22122, 22179 (April 23, 2004)[6]; *Guerrero v. J.W. Hutton, Inc.*, 458 F.3d 830, 836

(8th Cir. 2006) ("We agree the regulations do not prohibit employers from requiring

employees to work a specific number of hours per week and track their time to ensure

they have worked the requisite number of hours."); *Renfro v. Indiana Michigan Power*

*Co.*, 370 F.3d 512, 516 (6th Cir. 2004) (requirement that employees "account for at least

40 hours of work each week" does not defeat exempt status because "[i]t is only when

an employer actually deducts from an employee's paycheck that the employee is

ineligible for the exemption"); *Ottaviano v. Home Depot, Inc.*, 701 F. Supp. 2d 1005,

1009 (N.D. Ill. 2010) ("the proposition that employers may set general requirements as

---

[6]   The Department of Labor's interpretation of its own regulations is controlling unless plainly
erroneous or inconsistent with the regulation.  *Auer*, 519 U.S. at 461 ("Because the salary-
basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our
jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." (internal
quotation marks and citation omitted)).

to the overall number of hours worked by exempt employees has widespread support").

Ellis acknowledges the Department of Labor's above-quoted interpretation but asserts

that it applies in cases dealing with the "accountability of public employees." (*See* Doc.

# 31 at 15.)  However, the caselaw, including the opinions previously cited, disprove

Ellis's argument, as does J.R.'s commonsense observation that numerous employees

at law firms (and elsewhere in the private sector) with high minimum hour requirements

would lose their exempt status if such requirements truly were, as Ellis states,

"anathema to salaried status" (*id.* at 17).  (Doc. # 34 at 3 n.1.)  Similarly, the Court

is not persuaded by Ellis's argument that J.R.'s violated the salary-basis test by

threatening to reduce her pay.  (Doc. # 1 at 4.)  Ellis presents no admissible evidence

of any such threats which, even if they did transpire, would not establish a significant

likelihood of improper deductions occurring, given that Ellis worked less than 50

hours/week 13 times but only had her pay reduced once.  *Cf. Coleman-Edwards*

*v. Simpson*, 330 Fed. Appx. 218, 220 (2d Cir. 2009) (unpublished) (two threats to dock

pay insufficient to establish violation of the salary-basis test where no salary deductions

occurred on those grounds).

## B.    "WINDOW OF CORRECTION" DEFENSE

Even if Ellis were able to show that J.R.'s did not intend to pay her on a salary

basis, she would still not be entitled to relief, because J.R.'s satisfies the "window of

correction" defense.  *See* 29 C.F.R. § 541.603(c) ("Improper deductions that are either

isolated or inadvertent will not result in loss of the exemption for any employees subject

to such improper deductions, if the employer reimburses the employees for such

improper deductions.").  The one-time deduction of $31.20 taken on April 3, 2012, was

certainly "isolated."  *Webster's New International Dictionary* 1199 (3d ed. 2002) (defining

"isolated," in part, as "occurring alone or once").  Indeed, Ellis does not dispute that the

reduction in her pay was "isolated."  Nor does she dispute that, the month after reducing

her pay, J.R.'s reimbursed her a total of $322.88.  Instead, Ellis argues that J.R.'s "may

not avail itself" of the defense because the defense "only protects employers who

made unintentional deductions."  (Doc. # 31 at 12-13.)  However, Ellis's argument is

untethered to the language of the exception, which says nothing of "unintentional"

deductions but, rather, protects employers who make "either isolated or inadvertent"

deductions.  29 C.F.R. § 541.603(c).  To the extent Ellis means to equate "unintentional"

with "inadvertent," her argument still fails, as the defense can equally be satisfied when

deductions are "isolated."  *See, e.g.*, *Knutzen v. Eben Ezer Lutheran Housing Center*,

815 F.2d 1343, 1349 (10th Cir. 1987) ("unless the context or congressional intent

indicates otherwise, the use of a disjunctive in a statute and regulations indicates that

alternatives were intended").  Accordingly, because the $31.20 deduction was isolated

and J.R.'s reimbursed Ellis for the amount of the deduction, J.R.'s is protected under

the "window of correction" defense.  *See, e.g.*, *Kennedy*, 410 F.3d at 372 (noting that

employer fell within the "window of correction" defense and stating that "isolated

instances of deductions do not create genuine issues of fact about the proper

characterization of the plaintiffs' positions").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED that the Motion for Summary

Judgment filed by Defendant J.R.'s Country Stores, Inc. (Doc. # 8) is GRANTED.

As such, it is

FURTHER ORDERED that Plaintiff Sandra Ellis's "Motion to Certify Conditionally a Collective Action under the Fair Labor Standards Act of 29 U.S.C. § 216(b) and for Court Assisted Notice" (Doc. # 13) is DENIED AS MOOT.  It is

FURTHER ORDERED that J.R.'s shall have its costs by filing a Bill of Costs with the Clerk of Court within 10 days of the entry of judgment.  Each party, however, shall bear its own attorney fees.  Finally, it is

FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

DATED:  July __12__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge